UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| ROUND TO FIT, LLC, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | No. 1:18-cv-00272-JRS-DML |
|  | ) |  |
| JONATHAN REIMER, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

**Order**

Under the Copyright Act, an employer is deemed to be the initial author of a "work made for hire," and thereby the initial owner of the copyright in the work. In order for this Court to render a declaration of authorship or ownership, an independent basis for federal jurisdiction beyond the Declaratory Judgment Act must exist. The Court now considers whether, when authorship and ownership in a copyright under the work made for hire doctrine by virtue of an employee acting within the scope of the employee's employment is asserted, the determination of authorship arises under the Copyright Act; for the reasons stated herein, it does. Thus, this Court has original subject matter jurisdiction over the Declaratory Judgment claim, and supplemental jurisdiction over the Plaintiff's state law claims and Defendant's motion must be denied.

This matter is before the Court on Defendant Jonathan Reimer's Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c). (ECF No. 33.) Plaintiff Round to Fit, LLC ("R2Fit") brought this action under the Copyright

Act of 1976, 17 U.S.C. § 101 *et seq.* (the "Copyright Act"), the Indiana Uniform Trade Secrets Act, Ind. Code § 24-2-3-1 *et seq.*, the Indiana Crime Victims Recovery Act, Ind. Code § 34-24-3-1, and Indiana common law. R2Fit seeks a declaratory judgment from the Court confirming R2Fit's authorship and ownership of the copyright at issue, as well as all other appropriate relief for R2Fit's state law claims. This Court has jurisdiction over R2Fit's federal-law claim pursuant to 28 U.S.C. § 1338 and supplemental jurisdiction over its state-law claims pursuant to 28 U.S.C. § 1367. After carefully reviewing the pleadings, motion, response, and reply, the Court concludes that Reimer's motion should be **DENIED** for the following reasons.

## I. Legal Standard

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment after the parties have filed a complaint and an answer. A challenge to subject matter jurisdiction falls within the ambit of Rule 12(b)(1). Rule 12(b)(1) and Rule 12(c) motions are analyzed under the same standard as a motion to dismiss under Rule 12(b)(6). *Silha v. ACT, Inc.*, 807 F.3d 169, 173–74 (7th Cir. 2015). *Pisciotta v. Old Nat'l Bancorp.*, 499 F.3d 629, 633 (7th Cir. 2007); *Frey v. Bank One*, 91 F.3d 45, 46 (7th Cir. 1996). Under Rule 12(b)(6), a complaint must allege facts that are "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id*. In other words, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d

575, 580 (7th Cir. 2009) (internal citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

Like a Rule 12(b)(6) motion, the court will grant a Rule 12(c) motion only if "it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998) (quoting *Craigs, Inc. v. Gen. Elec. Capital Corp.*, 12 F.3d 686, 688 (7th Cir. 1993)). The factual allegations in the complaint are viewed in a light most favorable to the non-moving party; however, the court is "not obliged to ignore any facts set forth in the complaint that undermine the plaintiff's claim or to assign any weight to unsupported conclusions of law." *Id.* (quoting *R.J.R. Serv., Inc. v. Aetna Cas. & Sur. Co.*, 895 F.2d 279, 281 (7th Cir. 1989)).

"Copyright . . . vests initially in the author or authors of [a] work." 17 U.S.C. § 201(a). "In the case of a work made for hire, the employer . . . for whom the work was prepared is considered the author for purposes of this title, and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright." 17 U.S.C. § 201(b). "[A] work for hire can arise through one of two mutually exclusive means, one for employees and one for independent contractors, and . . . the classification of a particular hired party should be made with reference to agency law." *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 743 (1989).

## II. Background

The following allegations are taken from R2Fit's Complaint (ECF No. 1.) and are accepted as true for purposes of deciding the pending motion, consistent with the applicable standard of review. The Court also considers the documents (ECF No. 1-1 – 1-6) attached to R2Fit's Complaint, which are part of the Complaint for all purposes and may be considered by the Court in ruling on the Motion without converting it to one for summary judgment. *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002) (citing Fed. R. Civ. P. 10 (c)).

R2Fit manufactures and sells specialized exercise equipment that utilizes data from proprietary software to provide the user with a customized workout. (ECF No. 1 ¶ 6.) In October 2016, R2Fit hired Reimer to work as a personal trainer to R2Fit clients. (ECF No. 1 ¶ 10.) A few months after Reimer joined R2Fit, R2Fit contracted with a third-party software development company, SpaceTech Corporation ("SpaceTech"), to upgrade its proprietary software. (ECF No. 1 ¶ 15.) Reimer grew interested in helping R2Fit further develop and upgrade its software and expressed his desire to assist R2Fit and SpaceTech with the software upgrade project (the "project"). (ECF No. 1 ¶¶ 15-19.) Accordingly, R2Fit expanded the scope of Reimer's employment to allow Reimer to work on the project and included Reimer's involvement in the project in the "Software Development Contract" R2Fit executed with SpaceTech. (ECF No. 1 ¶ 19; ECF No. 1 ¶ 24.)

R2Fit promoted Reimer to Chief Technology Officer in January 2017, despite Reimer's lack of formal training in software development or any other related subject

4

matter. (ECF No. 1 ¶ 16; ECF No. 1 ¶ 26.) In around March 2017, R2Fit became concerned that SpaceTech may be unable to finish the project to R2Fit's satisfaction. (ECF No. 1 ¶ 29.) But, Reimer informed R2Fit's Chief Executive Officer that he could finish the project without SpaceTech, if R2Fit provided him "additional training and resources." (ECF No. 1 ¶ 30.)

In March 2017, R2Fit accepted Reimer's proposition and terminated its business relationship with SpaceTech. (ECF No. 1 ¶ 31.) R2Fit terminated the services contract between it and SpaceTech and made final payment to SpaceTech to "obtain the source code for the software [SpaceTech] had . . . developed up to that point." (ECF No. 1 ¶ 31.) Following R2Fit's final payment to SpaceTech, SpaceTech sent the source code ("software code") to R2Fit's CEO, Ariel Huskins ("Huskins"), who shared it with Reimer. (ECF No. 1 ¶ 32.) R2Fit then provided Reimer the requested "paid mentor, [ ]educational resources, and [ ]company computer" to facilitate Reimer's continued work on the project. (ECF No. 1 ¶ 34.) Reimer worked on the project from April 2017 to October 2017, writing and rewriting the software code for R2Fit's upgraded software. (ECF No. 1 ¶ 35.) Other R2Fit employees assisted Reimer in the writing and rewriting of the code, which proceeded under Huskins' direction. (ECF N. 1 ¶¶ 36-37.) R2Fit paid Reimer for his work on the project. (ECF No. 1 ¶¶ 38-39.)

In August 2017, Reimer "abruptly decided" that "because of his efforts" he owned the software code and demanded additional compensation to "license" the software to R2Fit. (ECF No. 1 ¶ 40.) R2Fit's CEO demanded that Reimer return the software code to R2Fit, but Reimer refused, stating that he would only return the software

5

code if R2Fit provided him additional compensation. (ECF No. 1 ¶ 41.) R2Fit refused to provide Reimer additional compensation, and on November 7, 2017, R2Fit terminated Reimer's employment. (ECF No. 1 ¶ 42.) In a letter confirming Reimer's termination, R2Fit demanded that Reimer return to R2Fit "any and all confidential information and company property in his possession." (ECF No. 1 ¶ 43.) Reimer refused to return the software code, stating in his reply letter that "R2Fit believes it owns software that I have written; **It does not**." (ECF No. 1-5.) Rather, Reimer "alleged he wrote [the software] 'on [his] own time and using [his] personal computer.'" (ECF No. 1 ¶ 44.) R2Fit then filed the present suit seeking a declaratory judgment confirming R2Fit as the rightful "author and copyright owner of the software/source code under the 'works made for hire' doctrine of the Copyright Act, 17 U.S.C § 101" and alleging several state law violations related to Reimer's possession of the software code.

### III. Discussion

R2Fit asserts five legal claims, the first under the Copyright Act and the others under Indiana law: (1) a request for declaratory judgment confirming R2Fit's authorship and ownership of the software code copyright under the Copyright Act; (2) misappropriation of trade secrets; (3) conversion; (4) criminal conversion; and (5) breach of contract. Reimer's Motion asserts that this Court does not have subject matter jurisdiction over R2Fit's declaratory judgment claim, because this claim (1) raises only a question of Indiana law: whether "Reimer was acting as an employee *under Indiana law* when he wrote [the] software," (ECF 33 at 5), and (2) does not present

6

a "case or controversy" as required by Article III of the United States Constitution. U.S. Const. art. 3 § 2, cl. 1. (ECF No. 33 at 6-7.) Reimer also argues that if the Court dismisses R2Fit's only purported federal law claim, the Court should decline to exercise its discretionary supplemental jurisdiction over R2Fit's state law claims. (ECF No. 33 at 8-9.)

**A. Subject Matter Jurisdiction**

The Court has subject matter jurisdiction over R2Fit's declaratory judgment claim. Reimer, though admitting that this action arises under the Copyright Act of 1976, 17 U.S.C. § 101, *et seq.* (EFC No. 25 ¶ 2), argues that the Court lacks subject matter jurisdiction because this case is about copyright ownership turning on whether Reimer was acting as an R2Fit employee under Indiana law when he wrote the software. Reimer further contends jurisdiction is lacking here because R2Fit fails to present a "case or controversy," as R2Fit suffered no "injury in fact" or no immediacy of injury as required by Article III of the Constitution. (ECF No. 33 at 6.) The Court rejects Reimer's arguments and finds that the Court has subject matter jurisdiction for two reasons: (1) R2Fit's request for declaratory judgment or authorship/ownership "arises under" the Copyright Act, requiring the Court to interpret certain of the Act's provisions and conferring to the Court subject matter jurisdiction; and (2) R2Fit has sufficiently alleged an Article III "case or controversy," because R2Fitand has shown that it suffered the requisite "injury in fact."

### i. Article III Standing

R2Fit has Article III standing to bring its claim for declaratory judgment. Article III of the United States Constitution limits the judicial power to deciding "cases and controversies." U.S. Const. art. 3, § 2, cl. 1. To establish Article III standing, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Silha v. ACT, Inc.*, 807 F.3d 169, 172-73 (7th Cir. 2015) (citing *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 559-60 (1992)). Here, R2Fit has alleged a concrete injury—that Reimer is holding R2Fit's proprietary software code hostage to extort payment from R2Fit based on his assertion that his efforts of authorship—namely, writing the code—in the software make him the owner of the software. (ECF No. 1 ¶ 42.) The pleadings reveal at least one injury—that Reimer has denied R2Fit's authorship/ownership rights granted under the Copyright Act—that rises above the speculative level. Many injuries may radiate outward from this offense. Without a copy of the code, R2Fit cannot use it, cannot register it, cannot sue for infringement, cannot license it, cannot modify it, cannot exercise any of its rights that authorship arising under federal law would vest in R2Fit as original owner if the software is deemed a work made for hire. Next, R2Fit's complained of injury is traceable to Reimer, as Reimer is responsible for claiming ownership rights adverse to those of R2Fit and for refusing to return the code to R2Fit. (ECF No. 1 ¶¶ 40-46.) Finally, a declaration that R2Fit is

the rightful author and thereby the initial owner of the software code copyright would be a favorable result for R2Fit, as such a declaration would resolve the dispute over ownership of the copyright. (ECF No. 1 ¶ 57.) Indeed, Reimer admits that if the code is a work made for hire, which is defined under and requires application of the Copyright Act, then R2Fit is the rightful author and owner. (ECF No. 33 at 4.)

Yet, Reimer maintains there is no "immediacy of injury," in this case. But, while Reimer notes that this is not an infringement case, he relies on cases where there is no infringement alleged or imminent. No immediacy is pleaded. Such cases are inapposite here, where R2Fit contrarily alleges currently being denied access to the code it authored under the work made for hire doctrine. There is no speculative future controversy in this case. Also, it is not a requirement that the harm or threat of harm stem from an infringement action. *Klinger v. Conan Doyle Estate, Ltd*, 775 F.3d 496, 499 (7th Cir. 2014) (citing *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 132 (2007)).

### ii. Declaratory Judgment

This Court has subject matter jurisdiction over R2Fit's request for declaratory judgment. The Declaratory Judgment Act provides: "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. However, the Declaratory Judgment Act is not an independent basis for subject matter jurisdiction. *Skelly Oil Co. v. Phillips Petroleum Co.,* 339

9

U.S. 667, 671–72 (1950). Rather, it provides a remedy available only if the court has jurisdiction from some other source. *Cat Tech LLC v. TubeMaster, Inc.,* 528 F.3d 871, 879 (Fed. Cir. 2008) (citing *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240 (1937)).

In this case, the "other source" which provides the Court jurisdiction is the Copyright Act—specifically, the Act's "work made for hire" provisions. *See* 17 U.S.C. § 101. "The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to . . . copyrights." 28 U.S.C. § 1338(a). To determine whether an action arises under the Copyright Act, courts in the Seventh Circuit apply the standard articulated in *T.B. Harms Co. v. Eliscu*, 339 F.2d 823 (2d Cir. 1964). *See Int'l Armor & Limousine Co. v. Moloney Coachbuilders, Inc.*, 272 F.3d 912, 915–916 (7th Cir. 2001).

Under the "*Harms* test," an action arises under the Copyright Act "if the complaint is for a remedy expressly granted by the Act . . . ." 339 F.2d at 828. Here, the remedy R2Fit seeks is a declaration that R2Fit is the rightful author and owner of the software code copyright, a declaration that requires the Court to analyze, pursuant to the Copyright Act, whether Reimer wrote the software code at issue as a "work made for hire." *See* 17 U.S.C. § 101 (defining a "work made for hire" as "a work prepared by an employee within the scope of his or her employment"). Here there is no dispute whether R2Fit employed Reimer (ECF 25 ¶ 10) during the relevant period. Rather, Reimer urges that he did not write the software within the course and scope of that employment. Resolving this issue, and therefor ownership under the work

10

made for hire doctrine, he concludes, is a matter of state law; namely, the definition of "employee" under Ind. Code § 22-3-6-1(b). (ECF 33 at 4-5; ECF 41 at 1.)

While not necessary for deciding the issue, it seems odd to cite Ind. Code § 22-3-6-1(b). Not only does Reimer admit to being an employee, the cited definition comes from a worker's compensation statute and provides no guidance for determining whether a work was prepared within the scope of an employee's employment. Rather, courts look to general common law of agency. *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 740–41 (1989). Not only may such law be deemed federal common law rather than state law, *id.*, but it is not the threshold issue, which is that "work made for hire" must be construed, and that is an analysis under the Copyright Act.

Conversely, it is true that on occasion ownership of copyrights may be based on state law. For example, if the ownership arose by virtue of a contract, then state contract law would govern. But, the cases relating to such ownership are inapposite as R2Fit claims initial ownership by virtue of authorship under the work made for hire doctrine. Initial ownership follows authorship as provided for under the Copyright Act, not under state law. Thus, authorship and initial ownership may not only vest in the actual author of a work, but also in a co-author, or a non-author such as an employer in the case of a work made for hire. Each of these is defined by and must be construed under the Copyright Act. Indeed, Reimer concedes that determinations of initial ownership based on "joint authorship" or "co-authorship" can raise federal issues, "such as whether a party's 'contribution' was copyrightable under the Copyright Act. (ECF 41 at 2.) First, the Court notes that the very same issues could arise

11

in this case. For example, whether the contributions by Huskins or the other R2Fit employees are copyrightable. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007) ("[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint.") Second, Reimer's attempts to distinguish initial ownership under joint authorship from initial ownership under work made for hire by stating without authority that determining whether an employer-employee relationship exists—as determined by state law—is what triggers the application of the work made for hire doctrine. The state tail does not wag the Copyright Act dog. Authorship, whether it be sole authorship, joint authorship or work-made-for-hire authorship, is determined under the Copyright Act and determines initial ownership in the copyright. Subsequent ownership, which is not at issue here, may be a matter of state law, as may be a determination of other matters, such as whether others contributed to the writing of the software, and whether those contributions fall under the work made for hire doctrine. At base, though, it is enough that this case involves the construction of "work made for hire," which necessarily requires analysis under the Copyright Act.

Having found that work made for hire is at issue, Indiana employment law is not at issue. Also, there is also no allegation that the other mutually exclusive means of creating a work made for hire—namely a person, such as an independent contractor hired to create the work—is at issue. Indeed, none of the pleadings implicate a contractual obligation relating to a non-employee writing the software, for example a software development agreement with Reimer. In any event, courts would look to the

12

general common law of agency. If the portion of the code written by Reimer is a work made for hire, then R2Fit is under the Copyright Act the author and ownership vests in R2Fit by operation of federal law, unless there is a written agreement between the parties to the contrary. 28 U.S.C. § 201. No such written agreement is alleged to exist. Accordingly, R2Fit's action arises under the Copyright Act and ***not under state law***, to the extent disposition of R2Fit's claim requires the Court to interpret the Copyright Act's definition of "work made for hire" in determining whether Reimer wrote the software code within the scope of his employment at R2Fit.

In *Barnhart v. Federated Dep't Stores, Inc.*, No. 04-Civ-3668, 2005 WL 549712, *4 (S.D.N.Y. Mar. 8, 2005), the court denied the plaintiff's motion to remand and found that federal jurisdiction existed. The court stated: "[t]he Complaint alleges that '[t]he Songs are not works for hire,' a conclusion that would require the interpretation of the term "works-for-hire" and its corresponding provisions under the Copyright Act . . . . Because the plaintiff's claims require construction of the Copyright Act and therefore arise under that Act, the motion to remand based on lack of subject matter jurisdiction is denied." *See also gh, LLC v. Curtin*, 422 F. Supp. 2d 994, 997 (N.D. Ind. 2006) (citing *Barnhart*, 2005 WL 549712, at *4). Likewise, the court in *Gaiman v. McFarlane* found that questions of copyright ownership "cannot be answered without reference to the Copyright Act," and therefore "arise under the Act." 360 F.3d 644, 652-53 (7th Cir. 2004).

As in the present case, the plaintiff in *Gaiman* sought a declaration that he was a "co-owner" of a comic book copyright pursuant to the Copyright Act, just as

13

R2Fit seeks a declaration that it is the rightful owner of the software code copyright at issue. Indeed, the court in *Gaiman* had subject matter jurisdiction where the plaintiff requested a declaration similar to R2Fit's request. The *Gaiman* court explained that the plaintiff's request for a declaration of copyright co-ownership clearly implicated the "work made for hire" doctrine of the Copyright Act. *See Gaiman*, 360 F. 3d at 653 (7th Cir. 2004). The same scenario exists in the present case: R2Fit's request for a declaration of ownership turns on the interpretation of the "work made for hire" provisions of the Copyright Act. As such, the Court has subject matter jurisdiction over this claim.

### B. Supplemental Jurisdiction

District courts have supplemental jurisdiction "in any civil action of which the district courts have original jurisdiction," and where the claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. §1367. When deciding whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988)).

R2Fit asserts four state law claims: (1) misappropriation of trade secrets, (2) conversion, (3) criminal conversion, and (4) breach of contract, all which stem from the dispute over copyright ownership of the software code at issue. R2Fit's state law

claims are so related to the Copyright Act claim that they "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367. More specifically, because the question of whether R2Fit is the author and initial owner of the copyright over the software code is central to the disposition of R2Fit's state law claims and because both R2Fit's federal and state claims arise from the same factual circumstances, the Court finds that R2Fit's state law claims arise from the same case or controversy—whether R2Fit is the rightful owner of the software code copyright pursuant to the "work made for hire" provisions of the Copyright Act.

In addition, the Court's declaration that R2Fit is or is not the rightful author of the software code and therefore the initial owner of the software code copyright by operation of 17 U.S.C. § 201(b) will affect the disposition of R2Fit's state law claims, namely whether Reimer breached his services contract, misappropriated trade secrets, or committed conversion with respect to R2Fit's software code. (ECF No. 1 ¶¶ 56-72.) Accordingly, the values of judicial economy, convenience, fairness, and comity weigh in favor of the Court's exercise of supplemental jurisdiction to facilitate an efficient resolution of R2Fit's closely related federal and state claims. Therefore, the Court's exercise of supplemental jurisdiction over R2Fit's state law claims is proper.

### IV. Conclusion

For the foregoing reasons, Reimer's Motion for Judgment on the Pleadings and Motion to Dismiss (ECF No. 33) is **DENIED**. The stay in this matter is hereby lifted (ECF No. 49) and the case will proceed. The Court requests that the Magistrate

Judge facilitate a status conference to reinstate a case management plan and appli-cable deadlines in this matter.

**SO ORDERED.**

Date: 3/29/2019

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana


Distribution:

April M. Jay
OVERHAUSER LAW OFFICES LLC
ajay@overhauser.com

Paul B. Overhauser
OVERHAUSER LAW OFFICES, LLC
poverhauser@overhauser.com

Christopher R. Taylor
Boring & Taylor, P.C.
chris@boringtaylor.com